# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

BLANCHE DENISE JACKSON, ELIZABETH ANN
SIFUENTES, ESMERELDA SIFUENTES, PHILIP
GOLDEN and WILLIE MARTINEZ on behalf of
themselves and other persons similarly situated, known
and unknown,

                    Plaintiffs,

      vs.

MASTRONARDI PRODUCE LIMITED, a foreign
corporation, MASTRONARDI II, LLC, a Michigan
corporation formerly known as MASTRONARDI
PRODUCE-USA, LLC, MASTRONARDI PRODUCE-
USA, INC., a Michigan corporation formerly known as
MASTRONARDI PRODUCE, INC., MINUTE MEN,
INC., a foreign corporation also known as MINUTE
MEN STAFFING SERVICES, MINUTE MEN
STAFFING OF MICHIGAN, INC., a Michigan
corporation also known as MINUTE MEN STAFFING
SERVICES,

                    Defendants.

Case No. 2:11-cv-11525-PDB-LJM

Hon. Paul D. Borman

---

### MASTRONARDI DEFENDANTS' MOTION TO DISMISS COUNTS III AND V OF PLAINTIFFS' FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE TO DECLINE SUPPLEMENTAL JURISDICTION OF COUNTS III AND V

Defendants Mastronardi Produce-USA, Inc. ("Mastronardi USA"), Mastronardi Produce

Limited, and Mastronardi II, LLC (collectively referred to as "Mastronardi" or "Mastronardi

Defendants),[1] move pursuant to Rules 12(b)(6) and 12(f), for dismissal of Counts III and V of

Plaintiffs' First Amended Complaint (referred to as "FAC").   These Counts should be dismissed

---

[1] Plaintiffs have incorrectly named as Defendants two Mastronardi entities: Mastronardi Produce Limited, which is a
Canadian corporation headquartered in Ontario, and Mastronardi II, LLC, a defunct Michigan limited liability
company.  These entities had no dealings with the Plaintiffs, are improperly named, and are expected to be and
should be dismissed.

7150311.3 29674/144165

because Plaintiffs have failed to state a claim for breach of contract (Count V) and there is no claim for overtime and minimum wage under the Michigan Minimum Wage Law ("MMWL") (Count III).

Plaintiffs purport to bring Counts III and V as a Rule 23 class action (FAC, ¶51). As is more fully explained in the accompanying brief, should the Court not grant summary judgment with respect to Counts II and V, the Mastronardi Defendants ask that this Court strike Plaintiffs' class action allegations or decline to exercise supplemental jurisdiction over those claims because of the inherent incompatibility between Plaintiffs' opt-in federal Fair Labor Standards Act ("FLSA") claims in Counts I and II and their opt-out state claims in Counts III and V.

WHEREFORE, the Mastronardi Defendants respectfully request that this Court dismiss, strike, or decline to exercise supplemental jurisdiction over Plaintiffs' state law claims in Counts III and V.

Respectfully submitted,

CLARK HILL PLC

By:     *s/ Jennifer M. Buckley*
        Mark W. McInerney (P29077)
        Jennifer M. Buckley (P38767)
        Mary A. Kalmink (P42954)
        500 Woodward Avenue, Suite 3500
        Detroit, MI  48226
        (313) 965-8300
        Attorneys for Defendant Mastronardi

        THAV GROSS PC
        David E. Einstandig (P47344)
        30150 Telegraph Road, Suite 444
        Bingham Farms, Michigan 48025
Date: August 12, 2011          (248) 645-1700
        Of Counsel for Defendant Mastronardi

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BLANCHE DENISE JACKSON, ELIZABETH ANN
SIFUENTES, ESMERELDA SIFUENTES, PHILIP
GOLDEN and WILLIE MARTINEZ on behalf of
themselves and other persons similarly situated, known
and unknown,

                Plaintiffs,

     vs.

MASTRONARDI PRODUCE LIMITED, a foreign
corporation, MASTRONARDI II, LLC, a Michigan
corporation formerly known as MASTRONARDI
PRODUCE-USA, LLC, MASTRONARDI PRODUCE-
USA, INC., a Michigan corporation formerly known as
MASTRONARDI PRODUCE, INC., MINUTE MEN,
INC., a foreign corporation also known as MINUTE
MEN STAFFING SERVICES, MINUTE MEN
STAFFING OF MICHIGAN, INC., a Michigan
corporation also known as MINUTE MEN STAFFING
SERVICES,

                Defendants.

Case No. 2:11-cv-11525-PDB-LJM

Hon. Paul D. Borman

---

## BRIEF IN SUPPORT

## OF MASTRONARDI DEFENDANTS' MOTION TO DISMISS COUNTS III AND V OF PLAINTIFFS' FIRST AMENDED COMPLAINT OR IN THE ALTERNATIVE, TO DECLINE SUPPLEMENTAL JURISDICTION OF COUNTS III AND V

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.................................................................................................. ii

I.      INTRODUCTION .................................................................................................. 1

II.     BACKGROUND ................................................................................................... 2

III.    ARGUMENT......................................................................................................... 3

        A.      Standard of Review.................................................................................... 3

        B.      Plaintiffs' Count V Contract Claim Fails As Plaintiffs Do Not Allege The
                Requisite Facts to Support a Contract Claim and It Also Fails as a Matter of
                Law ............................................................................................................. 4

        C.      Plaintiffs' Count V Contract Claim Is Barred Under Michigan Law By The
                Exclusive Remedies Doctrine .................................................................... 8

        D.      Count III Fails To State A Claim Because The Michigan Minimum Wage Law
                Does Not Apply To Employers Subject To The FLSA And Further, It Does Not
                Regulate Employee Waiting Time, Rest Periods, Or Deductions From Pay......... 10

        E.      Dismissal Of Count III, Brought Only As A Class Action, Is Mandated, Because
                A Class Action May Not Be Maintained Under The MMWL.............................. 12

        F.      Plaintiffs' State Class Action Claims Also Must Be Dismissed As Inherently
                Incompatible With Plaintiffs' Federal Collective Action ...................................... 14

        G.      This Court Should Exercise Discretion And Deny Supplemental Jurisdiction Of
                Plaintiffs' State Claims ............................................................................... 16

IV.     CONCLUSION.................................................................................................... 18

7150311.3 29674/144165

# INDEX OF AUTHORITIES

## Cases

*Aguilera v. Mich. Turkey Prods. Coop., Inc.*, 2009 U.S. Dist. LEXIS 100736
   (W.D. Mich. Oct. 28, 2009) ................................................................ 15, 16, 18
*Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) .................... 3, 4
*Ayres v Balousek* (E.D. Mich. Aug. 22, 2005) 36 EBC 2203 ...................................... 11
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, 1974 (2007) ... 3
*Bell v. Citizens Fin. Group, Inc.*, 2011 U.S. Dist. LEXIS 64629 (W.D. Pa. June 8, 2011) ........ 15
*Dumas v. Auto Club Ins. Assoc.*, 437 Mich. 521; 473 N.W.2d 652 (1991) .................. 7, 8, 19
*Ellis v. Edward D. Jones & Co., L.P.*, 527 F. Supp. 2d 439 (W.D. Pa. 2007) ...................... 15
*Fetrow-Fix v. Harrah's Entm't, Inc.*, 2011 U.S. Dist. LEXIS 61743 (D. Nev. June 9, 2011) ..... 15
*Fluor Enterprises, Inc. v. Dep't of Treasury*, 477 Mich. 170; 730 N.W.2d 722 (2007) ............. 13
*Jarbo v. BAC Home Loan Serv.*, 2010 U.S. Dist. LEXIS 132570 (E.D. Mich. Dec. 15, 2010). 3, 4
*Johnson v. BNC Mortgage Corp.* 2010 U.S. Dist. LEXIS 93268 (E.D. Mich. Sept. 8, 2010) ....... 4
*Khadera v. ABM Indus.*, 701 F. Supp. 2d 1190 (W.D. Wash. 2010) ............................................ 15
*LaChapelle v. Owens-Ill., Inc.*, 513 F.2d 286 (5th Cir. 1975) ......................................... 15
*LaCourse v. GRS III, LLC*, 2006 U.S. Dist. LEXIS 89935 (E.D. Mich. Dec. 13, 2006)...... 7, 8, 19
*Lafayette Transfer & Storage Co. v. Michigan Pub. Util. Comm.*, 287 Mich. 488;
   283 N.W. 659 (1939) ......................................................................................... 9
*Malcolm v. East Detroit*, 437 Mich. 132; 468 N.W.2d 479 (1991) ...................................... 13
*Mathews v. ALC Partner, Inc.*, 2009 U.S. Dist. LEXIS 75097 (E.D. Mich. Aug. 24, 2009) ....... 15
*In re Mazurkiewicz's Estate*, 328 Mich. 120; 143 N.W.2d 86 (1950) ................................... 7
*McClements v. Ford Motor Company*, 473 Mich. 373; 702 N.W.2d 166 (2005) ......................... 9
*McLiechey v. Bristol W. Ins. Co.*, 474 F.3d 897 (6th Cir. 2007) .......................................... 9
*Monroe Beverage Co. Inc. v. Stroh Brewery Co.*, 454 Mich. 41; 559 N.W.2d 297 (1997) ........... 9
*Pacheco v. Boar's Head Provisions Co., Inc.*, 2010 U.S. Dist. LEXIS 30463
   (W.D. Mich. Mar. 30, 2010) ............................................................................ 7, 8
*Powers v. Centennial Communs. Corp.*, 679 F. Supp 2d 918 (N.D. Ind. 2009) ......................... 15
*Reed v. Yackell*, 473 Mich. 520; 703 N.W.2d 1 (2005) ...................................................... 8
*Rood v. General Dynamics Corp.*, 444 Mich. 107; 507 N.W.2d 591 (1993) ............................. 5
*Rowe v. Montgomery Ward & Co.*, 437 Mich. 627; 473 N.W.2d 268 (1991) ............................. 5
*Rowland v. Washtenaw Co. Rd. Comm.*, 477 Mich. 197; 731 N.W.2d 41 (2007) ....................... 13
*Sims v. Parke Davis & Co.*, 334 F. Supp. 774 (E.D. Mich. 1971), *aff'd* 453 F.2d 1259
   (6th Cir. 1971)............................................................................................ 15
*South Haven v. Van Buren Co. Bd. of Comm'rs*, 478 Mich. 518; 734 N.W.2d 533 (2007) ........ 13
*In re Spenger Estate*, 341 Mich. 491; 67 N.W.2d 730 (1954) ............................................. 8
*Toussaint v. Blue Cross v. Blue Cross & Blue Shield*, 408 Mich. 579; 292 N.W.2d (1980)...... 5, 6
*United Parcel Service, Inc. v. Bureau of Safety & Regulation*, 277 Mich. App. 192;
   745 N.W.2d 125 (2007) ................................................................................... 13
*Veenstra v. Washtenaw Country Club*, 466 Mich. 155; 645 N.W.2d 643 (2002) ..................... 13
*Walen v. Dep't of Corrections*, 443 Mich. 240; 505 N.W.2d 519 (1993) ................................. 13
*Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) ............. 5
*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010) ...................................... 4, 14
*Woodard v. FedEx Freight East, Inc.*, 250 F.R.D. 178 (M.D. Pa. 2008) ................................... 15

7150311.3 29674/144165

## I.    INTRODUCTION

On April 4, 2011, Plaintiffs filed this collective/class action in which they claim that the Mastronardi Defendants and Minute Men, Inc., Minute Men Staffing Services, Minute Men Staffing of Michigan, Inc., (collectively referred to as "Minute Men" or "Minute Men Defendants") violated the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"), the Michigan Minimum Wage Law, M.C.L. §408.381, *et seq.* ("MMWL") and breached employment contracts that they alleged Defendants collectively had with each of the Plaintiffs.[2] Plaintiffs' First Amended Complaint ("FAC") asserts the following claims:  Count I – FLSA Minimum Wage; Count II – FLSA Overtime; Count III – Michigan Minimum Wage Claim; Count IV – Michigan Overtime Claim; and Count V – Breach of Contract.[3]

The First Amended Complaint makes the following allegations:

- all Plaintiffs were required to ride in a company van to the Mastronardi USA facility and that approximately $28 per week was deducted from each employee's paycheck for this transportation (FAC, ¶33);
- approximately $20 was deducted several times per year for identification badges from the paychecks of Blanche Denise Jackson, Philip Golden, and Willie Martinez[4] (FAC, ¶34);
- Plaintiffs were required to wait before starting their shifts and were not paid for that time (FAC, ¶37);

---

[2] All of Plaintiffs' factual allegations apply to both their federal and their state claims.  Their allegations are directed to all of the Defendants, in many instances with no specificity as to which Defendant allegedly committed which violation.  The Mastronardi Defendants deny that they were the employer of any of the Plaintiffs, but for purposes of this motion only, they have not addressed this issue and have viewed the allegations made by Plaintiffs in the light most favorable to them.  Mastronardi Defendants, however, preserve this issue and deny that they were, at any time, an employer of any of the Plaintiffs.

[3] Contrary to Plaintiffs' counsel's comment in its response to Minute Men's motion to dismiss that Defendant Mastronardi "agreed to accept the filing (of the FAC) in resolution of all issues raised in its Motion for More Definite Statement," the order withdrawing the motion does not state the same.  Further, undersigned counsel, Jennifer Buckley, advised Mr. Paris that they were not satisfied that the proposed First Amended Complaint resolved all of the issues and that in fact, the Plaintiffs had failed in the amended pleading to state a contract claim due to the lack of specificity and the law.  Ms. Buckley advised Plaintiffs' counsel that they would proceed with this motion to dismiss as a result.  After filing the FAC, Plaintiffs have stipulated to the dismissal of Count IV, the Michigan overtime claim.

[4] This allegation lacks veracity given that Golden and Martinez were only employed a month according to the First Amended Complaint.

1

- one to two hours were deducted from Plaintiffs' paychecks for lunch hour and rest breaks even though they were never permitted more than half an hour for lunch and were not permitted any rest breaks (FAC, ¶40);
- time clock malfunctions at unspecified times resulted in Plaintiffs Blanche Denise Jackson, Elizabeth Ann Sifeuentes, Esmerelda Sifuentes and Philip Golden not being paid for all hours actually worked (FAC, ¶43); and
- Plaintiffs Blanche Denise Jackson, Elizabeth Ann Sifuentes and Esmerelda Sifuentes were charged for lost or damaged tools which resulted in the failure to pay minimum wage.  (FAC, ¶45).

## II.  BACKGROUND

The Mastronardi affiliated companies are a fourth-generation, family owned and operated processor and distributor of greenhouse-grown fresh produce.[5]  Mastronardi Produce, Ltd. ("Mastronardi Canada") is a Canadian corporation.  Mastronardi Produce – USA, Inc. ("Mastronardi USA") primarily repackages and/or distributes fresh produce throughout the United States.  Mastronardi USA opened its Livonia facility in July 2010.  Previously, it repacked and distributed product at Cogswell Street in Romulus, Michigan (January 2007 – July 2010) and at 5M Center Drive in Romulus, Michigan (May 2002 – December 2006).[6]  Due to the nature of the work and the shorter terms of employment, Mastronardi USA contracts with staffing companies which supply labor to its distribution facility.[7]

Plaintiffs were directly employed by Minute Men Defendants, which had staffing agreements with Mastronardi USA (Minute Men's Answer to original complaint, ¶¶ 4-8).[8]  None

---

[5]The Mastronardi Defendants recognize that a Rule 12(b)(6) motion must be based solely on Plaintiffs' First Amended Complaint.  Thus, the Mastronardi Defendants provide this background section consisting of undisputed facts simply to provide context for their motion.
[6]Plaintiffs incorrectly indicate that Mastronardi USA had facilities in Taylor and Ecorse, Michigan (FAC, ¶¶5 and 16).
[7]Finding, qualifying and recruiting workers is time intensive and Mastronardi USA has relied upon staffing companies to supply workers to them.
[8]The Minute Men Defendants have admitted that the named Plaintiffs were employees of Minute Men Staffing, Inc. of Michigan (Joint Answer of Minute Men Defendants, ¶¶ 4-8).

2

of the Plaintiffs were employed by any of the Mastronardi Defendants, although they provided services to Mastronardi USA.[9]

## III.   ARGUMENT

### A.   STANDARD OF REVIEW

The Mastronardi Defendants move to dismiss Counts III and V[10] under Fed. R. Civ. P. 12(b) (6) or, in the alternative, under 12(f). Under 12 (b)(6), a claim can be dismissed if it fails to state a claim under the law. Plaintiffs must allege sufficient facts to "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, 1974 (2007). *Accord, Jarbo v. BAC Home Loan Serv.*, 2010 U.S. Dist. LEXIS 132570, \*19 (E.D. Mich. Dec. 15, 2010) (Ex. 1). The Supreme Court, in a case following *Twombly*, stated that "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The *Iqbal* Court also stated that "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1949-50. *Iqbal* requires a two-part analysis. First, a court is to weed out those allegations which, because they are conclusions as opposed to factual allegations, are not entitled to an assumption of truth. It is only if Plaintiffs set forth allegations that survive this first prong that the court is to then go the second prong and analyze the true factual allegations to determine whether Plaintiffs have stated a legally plausible claim.

---

[9] The other Mastronardi entities had no dealings with the Plaintiffs, are improperly named and are expected to be dismissed.
[10] Plaintiffs have stipulated to the dismissal of Count IV of the First Amended Complaint with prejudice.

Rule 12(f) provides that a district court "may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted).

### B.    PLAINTIFFS' COUNT V CONTRACT CLAIM FAILS AS PLAINTIFFS DO NOT ALLEGE THE REQUISITE FACTS TO SUPPORT A CONTRACT CLAIM AND IT ALSO FAILS AS A MATTER OF LAW

*Iqbal, supra,* requires a two-part analysis to determine whether a claim has been stated upon which relief can be granted.  It first requires that the court weed out those allegations which, because they include nothing more than conclusions as opposed to factual allegations, are not entitled to an assumption of truth.  Only if Plaintiffs provide factual allegations to support a claim is the court to go to the second step of analyzing the true factual allegations to determine whether Plaintiffs have stated a legally plausible claim.

Plaintiff's First Amended Complaint, on its face, has alleged only legal conclusions: *i.e.,* that an employment contract existed between Plaintiffs and Defendants and that the Defendants breached its terms by failing to pay overtime, to pay for all hours worked, and/or to pay minimum wage for all hours worked, and by taking improper and unlawful deductions.  Plaintiffs have not set forth any **facts** to support a claim that an express or implied contract as to a particular term existed.  Indeed, the contract claims asserted by Plaintiffs merely reiterate statutory legal obligations.  In *Johnson v. BNC Mortgage Corp.* 2010 U.S. Dist. LEXIS 93268, *7-8 (E.D. Mich. Sept. 8, 2010) (Ex 2), the court dismissed a contract claim where no facts were alleged to support the  existence of a valid contract. *See also, Jarbo v. BAC Home Loan Srv.,* 2010 U.S. Dist. LEXIS 132750 (E.D. Mich. Dec. 15, 2010) (Ex 1).

4

In response to the Minute Men Defendants' Motion to Dismiss, the Plaintiffs make it clear that they are not alleging that an express contract existed between any one of the Defendants and Plaintiffs, either oral or written[11] (p. 3). Instead, Plaintiffs claim only that there was an implied in fact contract with all Defendants. (Plf's Response to Minute Men Defendants Motion to Dismiss, pp. 3-5.) Plaintiffs make a quantum leap in both the law and the facts and contend that there is an implied in fact agreement regarding specific terms, i.e., payment of minimum wage for waiting time, rest periods, for all hours worked and for overtime, and an agreement not to make certain deductions from employees' pay. But Plaintiffs have not properly pled an implied contract claim, nor can they.

The landmark case of *Toussaint v. Blue Cross v. Blue Cross & Blue Shield,* 408 Mich. 579, 597; 292 N.W.2d (1980) provides the basis of an implied employment agreement in Michigan. Under *Toussaint,* the presumption of employment at-will can be overcome if a contract is accompanied by "distinguishing features or provisions." *Rowe v. Montgomery Ward & Co.*, 437 Mich. 627, 637; 473 N.W.2d 268 (1991). Such provisions may become part of an employment contract as a result of "explicit" promises, or promises implied in fact. *Rood v. General Dynamics Corp.*, 444 Mich. 107, 117; 507 N.W.2d 591 (1993). The first prong is called the "contract theory" of *Toussaint,* and is grounded solely in contract principles "relative to the employment setting." *Rowe,* 437 Mich. at 632. The second prong of *Toussaint* provides that employer policies and procedures may become a legally enforceable part of an employment relationship if such policies and procedures instill "legitimate expectations" of job security in

---

[11] If Plaintiffs were claiming an express or oral contract, they would be obligated either to attach any written contract or, if oral, identify the nature of the oral promises and who made what promise to which Plaintiff. This type of claim would be one that would be inappropriate for a class action, given the individual issues that would need to be analyzed. Each of the five named Plaintiffs were hired at different times, in different years and at different locations. The relevant facts as to statements or policies that each employee can claim led that employee to legitimately rely upon the practice or policy as an implied term of his/her employment will vary from Plaintiff to Plaintiff. Notably, Plaintiff has completely failed to allege any facts for any of the plaintiffs. *See, generally, Wal-Mart Stores, Inc. v. Dukes,* ___ U.S. ___, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).

5

employees. *Rood*, 444 Mich. at 117. This prong is called the "legitimate expectations" theory of *Toussaint*, and is grounded solely on public policy considerations. *Rood*, 444 Mich. at 118.

Plaintiffs factually failed to plead either an express contract (oral or written) or an implied contract based on legitimate expectations. To state a claim on the latter basis, each Plaintiff would have to allege a policy or practice upon which he or she legitimately expected to personally rely upon.[12] *Toussaint* at 598-599; *Renny v Port Huron Hospital, 427 Mich. 415, 428; 398 N.W.2d 327 (1986) reh'g denied, 428 Mich. 1206 (1987).* In fact, the allegations in Count V set forth no allegations of legitimate expectations based on any policy or practice and merely recite alleged breaches of a nonexistent contract.

Moreover, the Common Facts section of the FAC alleges that Defendants engaged in policies and practices that <u>contradict</u> the alleged "implied contract" terms in paragraph 88. In paragraphs 36, 39, 42, 47 and 50, the Plaintiffs allege that it was a policy or practice of Defendants (in the singular or collectively) to make Plaintiffs wait for several hours and not to pay for the wait time, to improperly deduct for meal and rest periods that Plaintiffs did not receive, and that it was Defendants' practice and policy to deduct for van rides, for the loss, damage or misplacement of tools and identification badges. Given these factual allegations, Plaintiffs cannot claim that they had a legitimate expectation based on a policy or practice that they would be paid for wait time, meal and rest periods and/or that certain deductions would not be made when their own allegations state that the Defendants policies and practices were otherwise.

Moreover, the implied contract prong of *Toussaint* does not apply to failure to pay/compensation cases. *Dumas v. Auto Club Ins. Assoc.*, 437 Mich. 521; 473 N.W.2d 652

---

[12]This type of claim would not be appropriate for a class action since the policy upon which each person relied is an issue as is whether the person relied upon it.

7150311.3 29674/144165

(1991).   In *Dumas*, the plaintiffs claimed that the employer had promised that a certain commission structure would be in place "forever," and sued on a breach of contract theory when the employer changed that commission structure.   The court first determined that the "legitimate expectations theory" of *Toussaint* does not cover an employer's compensation policy, stating "[w]ere we to extend the legitimate-expectations claim to every area governed by company policy, then each time a policy change took place contractual rights would be called in to question."   *Id.* at 531.   The *Dumas* court then analyzed the claim for compensation under traditional express contract principles and found it lacking because Plaintiff failed to set forth any facts regarding the negotiations, consideration, and clarity of the alleged promises.

As noted above, Plaintiffs here have not claimed that an express contract existed.   They have also not alleged a legitimate expectations type contract, and even pleaded policies that contradicted such a claim.   The law and policy considerations similar to those in *Dumas* apply in the instant case and warrant the dismissal of the contract claim.   *See also*, *LaCourse v. GRS III, LLC*, 2006 U.S. Dist. LEXIS 89935 (E.D. Mich. Dec. 13, 2006) (Ex 3) (court dismissed a contract claim for overtime by employees who had been determined to be exempt under the FLSA on the basis that the implied contract theory does not apply to compensation claims).   *See also Pacheco v. Boar's Head Provisions Co., Inc.*, 2010 U.S. Dist. LEXIS 30463 (W.D. Mich. Mar. 30, 2010) (Ex 4).   The courts in these cases dismissed the contract claims, and the same should occur here.

In their response to Defendant Minute Men's Motion for Partial Dismissal, Plaintiffs cite a few cases that discussed whether an individual who performed services for an entity or for another, were employed "in fact" versus acting as independent contractors or volunteers.   *See, In re Mazurkiewicz's Estate*, 328 Mich. 120, 123-124; 143 N.W.2d 86 (1950) and *In re Spenger*

*Estate*, 341 Mich. 491, 493; 67 N.W.2d 730 (1954). In *Reed v. Yackell*, 473 Mich. 520, 531; 703 N.W.2d 1 (2005), the Michigan Supreme Court, when deciding whether the worker was covered by the Worker's Disability Compensation Act, held that a person who had been previously employed, then re-hired on a part-time intermittent basis and paid for those services, was an employee, not an independent contractor. These cases do not stand for the proposition cited by Plaintiffs, and the more specific law cited above, i.e., *Dumas, LaCourse,* and *Pacheco,* relative to compensation claims under the legitimate expectation doctrine are applicable instead.

Due to the Plaintiffs' failure to factually plead a proper implied contract claim and/or the fact that the law does not support the attempted implied contract claim theory posed, each of the Plaintiffs contract claims should be dismissed.

C. **PLAINTIFFS' COUNT V CONTRACT CLAIM IS BARRED UNDER MICHIGAN LAW BY THE EXCLUSIVE REMEDIES DOCTRINE**

Plaintiffs allege that Defendants breached terms and conditions of an alleged implied in fact employment agreement "that was in existence" by failing to pay Plaintiffs for all hours worked, failing to pay the "legally mandated" or "legally required" minimum wage and overtime rates, and by taking "improper and unlawful" deductions from employees' wages. (FAC ¶¶ 84-86). These contentions are accompanied by no allegations that indicate how the contract arose and, as argued *supra*, are apparently based on policies contrary to the alleged breaches. Beyond that, the alleged terms of the implied contract are nothing more than the statutory requirements that employees be paid at least minimum wage (unless otherwise exempt) for all hours worked, and overtime for more than 40 hours in a work week, as well as state law (Michigan Wages and

Fringe Benefits Act)[13] that prohibits certain deductions from wages if that deduction would reduce the employees' wages below minimum wage for all hours worked.

Before enactment of Michigan statutes on these issues, the common law did not require minimum wage for all hours worked, payment of overtime, nor did it prohibit deductions from wages. These rights arose only by virtue of statutes. Under Michigan's "exclusive remedies doctrine," "where a statute gives new rights and prescribes new remedies, such remedies must be strictly pursued; and a party seeking a remedy under the act is confined to the remedy conferred thereby and to that only." *Monroe Beverage Co. Inc. v. Stroh Brewery Co.*, 454 Mich. 41, 45; 559 N.W.2d 297 (1997), quoting *Lafayette Transfer & Storage Co. v. Michigan Pub. Util. Comm.,* 287 Mich. 488, 491; 283 N.W. 659 (1939).

In *McClements v. Ford Motor Company*, 473 Mich. 373; 702 N.W.2d 166 (2005), amended 474 Mich. 1201, 704 N.W.2d 68 (2005) (quoting *Monroe Beverage.*, 454 Mich. at 45), the Michigan Supreme Court noted that the statutory remedy is the sole remedy unless it is plainly inadequate, regardless of whether the employee chose to pursue it or not and/or regardless of whether the plaintiffs' claim can be maintained under that act. *See, McLiechey v. Bristol W. Ins. Co.,* 474 F.3d 897 (6th Cir. 2007).[14]

Since Count V is predicated solely upon statutory rights and obligations, and since the "exclusive remedies doctrine" restricts remedies for statutorily-created rights to the remedies permitted by the statute, Count V must be dismissed for that reason alone.

---

[13]The MMWL does not address deductions from employee paychecks. The Michigan Wages and Fringe Benefits Act does, although Plaintiffs have not stated a claim under this Act.

[14]*McLiechey* provided that a claim arising under the Michigan Insurance Code could not be stated because the Michigan Consumer Protection Act provided the exclusive remedy for the plaintiff's claim. Even though that Act did not provide a private remedy, the court concluded that it did not make the remedy plainly inadequate.

**D.    COUNT III FAILS TO STATE A CLAIM BECAUSE THE MICHIGAN MINIMUM WAGE LAW DOES NOT APPLY TO EMPLOYERS SUBJECT TO THE FLSA AND FURTHER, IT DOES NOT REGULATE EMPLOYEE WAITING TIME, REST PERIODS, OR DEDUCTIONS FROM PAY**

Count III of Plaintiffs' First Amended Complaint attempts to assert a claim under the Michigan Minimum Wage Act that is parallel to the claim asserted in Count I under the Fair Labor Standards Act.  While the two acts have some similarities, they are not identical; and one of their critical differences is fatal to Plaintiffs here.  The MMWL applies to employers subject to the FLSA only to the extent that the Michigan minimum wage is higher than the federal rate. MCLA §408.394.

Count III, like Count I, claims a statutory violation in that "Defendants failed to pay Plaintiffs ... for all hours they worked."  (FAC, ¶74-78).[15]  Although not completely clear, it appears that this allegation stems from what Plaintiffs believe were improper deductions from their pay, non-payment for "off-the-clock wait times" and/or failure to pay for certain rest or meal periods.  There is regulatory authority under the FLSA that certain non-work time, i.e., rest periods and wait time, can be considered work time or that certain deductions from employees' pay violates the FLSA.  But the MMWL neither prohibits such deductions nor requires that wait times, meal times, and/or rest periods be paid and/or that they be considered as time worked.

The MMWL specifies only the amount of the minimum hourly wage rate for employees. M.C.L. §408.384.  It does not explain how the number of hours is to be calculated; on its face, it merely says that one is to be compensated for "hours worked."  While it specifically allows for the promulgation of rules necessary for administration of the Act, M.C.L. §408.388, and although certain regulations with respect to the MMWL have been enacted, 1999 A.C., R. 408.701, *et seq.*, no rules have been promulgated that state that wait time, rest periods or meal

---

[15]Paragraphs 62 through 66 assert the same claims under the FLSA.

periods should be considered hours worked. Nor are there regulations that suggest that improper deductions constitute a failure to pay minimum wage. There is no legal support for the proposition that the MMWL has been violated by Defendants' alleged failures.

By contrast, regulations issued under the FLSA speak directly to the calculation of work time and the fact that certain wait time that benefits the employer is compensable. *See* 29 C.F.R. §§785.14-785.19. Without these regulations, wait time, by its very nature, is not work time. On the subject of meal and rest periods, U.S. Department of Labor regulations provide that certain rest periods may be compensable.[16] There is no Michigan equivalent to these regulations. There is neither statutory nor regulatory language in connection with the MMWL that supports Plaintiffs' claim that time that is clearly not work time should be counted as work time.

On the subject of deductions from pay, again the MMWL is silent, both in the statute itself and in the absence of regulations. While Section 7 of a different statute, the Michigan Wages and Fringe Benefits Act ("WFBA"), M.C.L. §408.477, provides that employers may not make deductions from employee pay "without the full, free and written consent of the employee," Plaintiffs have not asserted a claim under the WFBA. The reason for this omission is not difficult to understand. M.C.L. §408.481(1). requires a plaintiff to file a claim with the Michigan Department of Labor within 12 months of the violation prior to filing a civil suit against the employer. Lawsuits based on claims under the Michigan Wage and Fringe Benefits Act that were not filed with the Department must be dismissed. *Ayres v Balousek* (E.D. Mich. Aug. 22, 2005) 36 EBC 2203 (Ex 5).[17]

---

[16] CFR § 785.19.

[17] As noted above, individuals must exhaust their administrative remedies by filing a claim with the state agency under the WFBA. These Plaintiffs did not do this, and many of their claims would be time-barred by the one-year statute of limitations. M.C.L. §408.481. The MMWL, however, allows direct access to court and establishes a three-year limitations period. M.C.L. §408.393(1)(a). Plaintiffs are thus trying to transform their claim to one under the MMWL in order to take advantage of the longer limitations period and the ability to bring a private cause of action, without the legal basis to assert such a claim.

11

Plaintiffs, then, have not asserted a claim under the WFBA, because such a claim is not available to them.  They have attempted to assert what really amounts to a WFBA claim under the MMWL, but the MMWL does not address the conduct of which Plaintiffs complain.  Count III, attempting to assert a state law claim without benefit of state law, fails to state a claim for which relief may be granted, and should be dismissed.

### E.   DISMISSAL OF COUNT III, BROUGHT ONLY AS A CLASS ACTION, IS MANDATED, BECAUSE A CLASS ACTION MAY NOT BE MAINTAINED UNDER THE MMWL

Even if this Court were to decide  not to dismiss Count III on the merits in whole or in part, that count must be dismissed as to "those similarly situated" – i.e., as a class action.  The MMWL does not permit class actions by individual employees.

M.C.L. § 408.393 provides, in pertinent part:

> (1) If any employer violates this act, *the employee* affected by the violation, at any time within 3 years, may:
>
> (a) Bring a civil action for the recovery of the difference between the amount paid and the amount that, but for the violation, would have been paid *the employee* under this act and an equal additional amount as liquidated damages together with costs and such reasonable attorney's fees as may be allowed by the court.

The term "employee" is defined in the act as follows:

> (b) "Employee" means *an individual* not less than 16 years of age employed by  an employer on the premises of the employer or at a fixed site designated by the employer, and includes a minor employed under section 15(1) of the youth employment standards act, 1978 PA 90, M.C.L. §409.115. *See* M.C.L. §408.382.

Under the MMWL, while an individual can bring his or her own claim, the right to maintain a class action is vested solely in the Commissioner (i.e., the Director of the Department of Consumer and Industry Services).  M.C.L. §408.393(2).  Such an action is permitted only if the Commissioner has been unable to obtain voluntary compliance by the employer "within a

reasonable period of time." *Id.* The action is further limited to employees who are "similarly situated on the same work site." *Id.* No such action has been initiated here.[18] Thus, a private class action would violate the Michigan Legislature's intent that representative actions be brought only by the Commission, and only after the Commissioner has been unable to obtain compliance with the Act and only for those at the same work site. MCL §408.393(2). *See, e.g., South Haven v. Van Buren Co. Bd. of Comm'rs*, 478 Mich. 518, 529; 734 N.W.2d 533 (2007) ("Where a statute gives new rights and prescribes new remedies, such remedies must be strictly pursued; and a party seeking a remedy under the act is confined to the remedy conferred thereby and to that only") (citations omitted).

The primary goal of statutory interpretation is to "ascertain and to give effect to the intent of the Legislature." *United Parcel Service, Inc. v. Bureau of Safety & Regulation*, 277 Mich. App. 192, 202; 745 N.W.2d 125 (2007). The Legislature is presumed to have intended the meaning it plainly expressed, *Rowland v. Washtenaw Co. Rd. Comm.*, 477 Mich. 197, 219; 731 N.W.2d 41 (2007); and clear statutory language must be enforced as written. *Fluor Enterprises, Inc. v. Dep't of Treasury*, 477 Mich. 170, 174; 730 N.W.2d 722 (2007). See also, *Veenstra v. Washtenaw Country Club*, 466 Mich. 155, 160; 645 N.W.2d 643 (2002); M.C.L. §8.3a; *Walen v. Dep't of Corrections*, 443 Mich. 240, 248; 505 N.W.2d 519 (1993) (*citing Malcolm v. East Detroit*, 437 Mich. 132, 138; 468 N.W.2d 479 (1991)).

M.C.L. §408.393 is a clear expression of legislative intent and permits a suit only by "the employee" affected by the violation of the MMWL, defined in MCL §408.382 as "an individual." There is nothing in the Act that permits class-wide treatment of an MMWL

---

[18]Further, not all of the named Plaintiffs worked on the same work site. The two Sifuentes women did not work in the Livonia facility (¶ 14 of FAC) and Golden and Martinez did not work in the Romulus facility. (¶ 17 of FAC).

7150311.3 29674/144165

violation except by the Commissioner.[19]  This is consistent with the legislative understanding

that actions for unpaid wages will primarily be governed by the provisions of the FLSA, since a

claim under that Act also may only be brought as a *collective* action.  29 U.S.C. § 216(b).

As a result, even if Count III of Plaintiffs' Amended Complaint had substantive merit, it

could not be brought as a class action.  Therefore, Count III should be dismissed.

### F.   PLAINTIFFS' STATE CLASS ACTION CLAIMS ALSO MUST BE DISMISSED AS INHERENTLY INCOMPATIBLE WITH PLAINTIFFS' FEDERAL COLLECTIVE ACTION

Should this Court decide not to dismiss Plaintiffs' state claims on the merits for the

reasons set forth above, the Mastronardi Defendants ask that this Court strike those claims

pursuant to Rule 12(f), because Plaintiffs' state opt-out class action claims are inherently

incompatible with Plaintiffs' opt-in collective action under the FLSA.  This is the precise type of

situation where the Court should strike certain claims "to avoid the expenditure of time and

money" to litigate redundant or baseless issues.  *See Whittlestone,* 618 F.3d at 973.  In the

alternative, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state

law claims.

Unlike Rule 23 class actions, collective actions under the FLSA require potential class

members to opt-in to the class.  29 U.S.C. §216(b).  An FLSA plaintiff may not represent a class

simply by meeting the Rule 23 requirements and convincing the Court that it is otherwise a

worthwhile idea, as would be possible under Rule 23.  Rather, the FLSA plaintiff must obtain the

---

[19]Had the Legislature intended to permit class treatment of MMWL claims, it would have expressly authorized class actions in the Act, as it has in other statutes. *See, e.g.,* MCL §14.321(b)(3) (authorizing class actions for violation of the Public Safety Solicitation Act); MCL §445.360 (authorizing class actions for violations of the Pricing and Advertising of Consumer Transactions Act); MCL §445.815 (authorizing class actions for violation of the Advertising Act); MCL §445.964(3) (authorizing class actions for violation of the Rental-Purchase Agreement Act); MCL §445.910 (authorizing the Attorney General to bring a class action for violation of Consumer Protection Act); and MCL §445.911(3) (authorizing class actions by individuals for violations of the Consumer Protection Act).

14

consent of every person he or she wishes to bring into the action. *Mathews v. ALC Partner, Inc.*, 2009 U.S. Dist. LEXIS 75097 (E.D. Mich. Aug. 24, 2009) (Ex 6).

FLSA collective actions are also fundamentally different from class actions in that collective actions do not incorporate the familiar requirements of Rule 23 class actions (numerosity, commonality, typicality, and adequacy of representation). The only requirements for certification of a collective action are those of Section 216(b), which requires that the members of the collective class be "similarly situated" and that they opt-in. The FLSA "establishes an opt-in mechanism for collective actions, 29 U.S.C. §216(b), while Fed. R. Civ. P. 23 calls for an opt-out mechanism for class actions." *Aguilera v. Mich. Turkey Prods. Coop., Inc.*, 2009 U.S. Dist. LEXIS 100736 (W.D. Mich. Oct. 28, 2009) (Ex 7).

Courts routinely hold that FLSA causes of action cannot be brought as Rule 23 class actions as the conflict between opt-in versus opt-out is often mutually exclusive and irreconcilable. *See, e.g., Sims v. Parke Davis & Co.*, 334 F. Supp. 774, 780 (E.D. Mich. 1971), *aff'd* 453 F.2d 1259 (6th Cir. 1971); *LaChapelle v. Owens-Ill., Inc.*, 513 F.2d 286, 289 (5th Cir. 1975); *Fetrow-Fix v. Harrah's Entm't, Inc.*, 2011 U.S. Dist. LEXIS 61743 (D. Nev. June 9, 2011) (Ex 8); *Accord, Bell v. Citizens Fin. Group, Inc.*, 2011 U.S. Dist. LEXIS 64629 (W.D. Pa. June 8, 2011) (Ex 9); *Khadera v. ABM Indus.*, 701 F. Supp. 2d 1190 (W.D. Wash. 2010); *Powers v. Centennial Communs. Corp.*, 679 F. Supp 2d 918 (N.D. Ind. 2009); *Woodard v. FedEx Freight East, Inc.*, 250 F.R.D. 178, 182 (M.D. Pa. 2008) (where "the state law lacks an opt-in requirement, the simultaneous prosecution of these claims will undermine the objectives Congress sought to achieve by amending §216(b) to require written consent to become party plaintiffs to FLSA actions."); *Ellis v. Edward D. Jones & Co., L.P.*, 527 F. Supp. 2d 439 (W.D. Pa. 2007). S*ee also generally* Bruce I. McDaniel, Annotation, *Effect of "opt-out" class action*

15

*provision of Rule 23(c) of Federal Rules of Civil Procedure on § 16(b) of Fair Labor Standards Act (29 U.S.C.A. § 216(b)) regulating class action under Fair Labor Standards Act*, 44 A.L.R. Fed. 118 (2010).

### G.   THIS COURT SHOULD EXERCISE DISCRETION AND DENY SUPPLEMENTAL JURISDICTION OF PLAINTIFFS' STATE CLAIMS

In addition to the basic conflict between opt-in and opt-out requirements, the state claims, should they survive a substantive motion to dismiss, also raise novel issues of law under the MMWL and the implied contract claim and/or the state implied contract claim will predominate the case and thus, this court should decline supplemental jurisdiction.  In *Aguilera v. Mich. Turkey Prods. Coop., Inc.*, 2009 U.S. Dist. LEXIS 100736 (W.D. Mich. Oct. 28, 2009) (Ex 7), the Court recognized that it had supplemental jurisdiction under 28 U.S.C. §1367(a) over plaintiff's state law claims for breach of contract, unjust enrichment, and violation of the MMWL, but elected not to exercise it.  The Court stated that under 28 U.S.C. §1367(c), a district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if, among other factors, the claim raises a novel or complex issue of state law or the claim substantially predominates over the claims over which the district court has original jurisdiction, or in exceptional circumstances, there are other compelling reasons for declining jurisdiction. *Aguilera*, 2009 U.S. Dist. LEXIS 100736 at *2.  The *Aguilera* Court, which had the same claims before it that this Court has here, noted that the plaintiffs' claims under the MMWL raised a novel issue of Michigan law pertaining to the interpretation and application of MCL §408.394. *Id*. at *4-*5.  In striking plaintiffs' class action allegations, the Court held that as a result of the novel issues of law, the fact that the breach of contract claims required different proofs than the FLSA claims, the fact that the state claims would likely predominate, and the inherent conflict

16

between the opt-in versus opt-out procedural mechanisms, it was compelled to decline supplemental jurisdiction. *Id. at* \*6-\*7.

As argued *supra*, the named Plaintiffs cannot bring a claim under the MMWL, since only the commissioner can do so. Even if individuals could bring claims, the MMWL does not define an hour worked to include certain wait time or meal periods, nor does it prohibit certain deductions from wages, as the FLSA does. To the extent that the Plaintiffs urge the court to interpret these laws differently than their plain language, the claim is a novel one under Michigan law and should be asserted in the state courts.

Moreover, Plaintiffs alleged state implied contract claims should not survive Defendants motion to dismiss, and if they did, it could only be the result of change in existing law. Such claims, if not dismissed, would predominate the other claims as they require different proofs. The five named Plaintiffs and their state law implied contract claims are not in any way common or typical of one another, and each implied contract would have to be evaluated separately. The facts as presently alleged highlight some of the obvious differences. One named Plaintiff worked for several months (FAC ¶ 28), while two of the named Plaintiffs (Golden and Martinez) are alleged to only have worked for a month or less in 2010 (FAC ¶¶ 31 and 32). The Sifuentes women are alleged to have worked for some months in 2008 (FAC ¶¶ 29 and 30). The Sifuentes women worked at a different location than Golden and Martinez who were employed two years later. As alleged in paragraphs 34, 43, and 45, each of these individuals allegedly suffered different violations. Further, each Plaintiff's alleged contract claim would have to be analyzed separately, since the claim would be based on each individual's legitimate expectation based on policies or practices that each relied upon;[20] and given the differences in dates and location of

---

[20]As noted, no such allegations have been pled, although allegation and proof of such facts are essential to an implied contract claim in Michigan.

7150311.3 29674/144165

employment, such policies or practices are likely different. These claims (should they survive substantively) would predominate in terms of proof of the scope of the issues raised. As noted by the court in *Aguilera,* few, if any of the proofs for a contract claim are the same as those required to prove an FLSA claim. The court also noted the procedural conflict between the opt-in and opt-out.

In summary, the Mastronardi Defendants' principal position is that Counts III and V should be dismissed because they fail to state a claim for which relief may be granted. Should that not occur, the Mastronardi Defendants submit that this Court should, like many other courts, strike Plaintiffs' class action allegations and dismiss Plaintiffs' state law claims due to the inherent conflict between opt-in and opt-out. To proceed with parallel opt-in and opt-out actions could be a legal quagmire when the substantive and procedural laws differ as they do. If this Court were to conditionally certify a collective action and later certify a class action, each putative Plaintiff would receive two notices – one indicating that the putative Plaintiff must affirmatively consent to participate in the lawsuit and the other notifying the putative Plaintiff that he will automatically be included in the lawsuit even if he does nothing. The claims for which each Plaintiff can recover under each statute are different, novel issues of Michigan law are involved, and the proofs for a contract claim are different than those for an FLSA claim. The potential for confusion is clear. Consequently, the Mastronardi Defendants ask that this Court decline to assert supplemental jurisdiction over Plaintiffs' state law claims should it decide not to strike the state class action claims.

## IV.   CONCLUSION

Count V should be dismissed for failure to state a claim. Not only have Plaintiffs failed to properly plead either an express or implied contract claim, they have factually pled that the Defendants engaged in practices and policies that are wholly inconsistent with the terms of the

18

implied contract terms that Plaintiffs stated existed.   Further, under *Dumas* and *LaCourse*, implied contract theories do not extend to compensation and pay policies.   Thus, Plaintiffs' implied contract claims fail as a matter of law.

Count III should be dismissed because the Plaintiffs' claims for paid meal, rest and wait time are not recognized under Michigan Law as an hour worked and by their very terms, they are not hours worked.   The claims that minimum wages were not properly paid due to improper deductions should also be dismissed because the Michigan Minimum Wage Law upon which the Plaintiffs claim is based, is not the proper Michigan statute under which one should state such a claim.   Further, the class action claims asserted on behalf of others under the Michigan Minimum Wage Law should be dismissed since the individuals, as opposed to the commissioner do not have the standing to bring them.

Finally, this Court should dismiss the remaining state claims, Counts III and V, on the basis that there is an inherent conflict between opt-in standards required by the FLSA and opt-out standards of Rule 23.   In the alternative, this Court could deny supplemental jurisdiction over the state claims as there are novel state law issues raised, the state claims may predominate, or for other compelling reasons.   Given the novel issues raised by Plaintiffs' state claims and the fact that the state implied employment contract claim has the potential to dominate the proofs, as well as the inherent conflict between the opt-in and opt-out, this Court has every reason to deny supplemental jurisdiction.

7150311.3 29674/144165

Respectfully submitted,

CLARK HILL PLC

By:     *s/ Jennifer M. Buckley*
        Mark W. McInerney (P29077)
        Jennifer M. Buckley (P38767)
        Mary A. Kalmink (P42954)
        500 Woodward Avenue, Suite 3500
        Detroit, MI  48226
        (313) 965-8300
        Attorneys for Defendant Mastronardi
        jbuckley@clarkhill.com

        THAV GROSS STEINWAY & BENNETT PC
        David E. Einstandig (P47344)
        30150 Telegraph Road, Suite 444
        Bingham Farms, Michigan 48025
        (248) 645-1700
Date: August 12, 2011     Of Counsel for Defendant Mastronardi

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

By:     *s/ Jennifer M. Buckley*
        Jennifer M. Buckley (P38767)
        jbuckley@clarkhill.com

20

7150311.3 29674/144165